UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - X

CORRINE B. PASQUALINI,                    :

                        Plaintiff,        :

        - against -                       :

MORTGAGEIT, INC. d/b/a IPI SKYSCRAPER     :
MORTGAGE, MARK PAPPAS, RICHARD SCHULMAN,
CHERYL COHEN and PATRICIA GORMAN,         :

                        Defendants.       :

- - - - - - - - - - - - - - - - - - - X

05 Civ. 9714 (WCC)

**ECF CASE**

**OPINION
AND ORDER**

**A P P E A R A N C E S :**

MAALOUF LAW FIRM, LLC
**Attorneys for Plaintiff**
500 Fifth Avenue, 14th Fl.
New York, New York 10110

JOHN J. MAALOUF, ESQ.

        Of Counsel

JACKSON LEWIS LLP
**Attorneys for Defendants**
59 Maiden Lane
New York, New York  10038-4502

FELICE B. EKELMAN, ESQ.
PETER C. MOSKOWITZ, ESQ.

        Of Counsel

**Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiff Corinne Pasqualini brings this sexual harassment and hostile working environment action against defendants MortgageIT, Inc. d/b/a IPI Skyscraper Mortgage, Mark Pappas, Richard Schulman, Cheryl Cohen and Patricia Gorman.   Plaintiff's eighteen count Second Amended Complaint alleges a litany of claims arising under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e, *et seq*. ("Title VII"), Article 15 of the New York Human Rights Law, N.Y. EXEC. LAW §§ 296, *et seq*. ("NYHRL") and New York common law, including: (1) creation of a hostile working environment in violation of Title VII against MortgageIT, Schulman, Pappas and Cohen; (2) creation of a hostile working environment in violation of the NYHRL against MortgageIT, Schulman, Pappas and Cohen; (3) *quid pro quo* sexual harassment against MortgageIT, Schulman, Pappas and Cohen in violation of Title VII; (4) *quid pro quo* sexual harassment against MortgageIT, Schulman, Pappas and Cohen in violation of the NYHRL; (5) unlawful retaliatory termination in violation of Title VII against MortgageIT, Pappas and Cohen; (6) grossly negligent retention against MortgageIT, Pappas and Cohen; (7) grossly negligent hiring against MortgageIT, Pappas and Cohen; (8) grossly negligent supervision against MortgageIT, Pappas and Cohen; (9) intentional infliction of emotional distress against MortgageIT, Schulman, Pappas and Cohen; (10) negligent infliction of emotional distress against MortgageIT, Schulman, Pappas and Cohen; (11) wrongful termination in violation of the NYHRL against MortgageIT, Pappas and Cohen; (12) "Retaliatory Termination and Defamation Through Conspiracy" against all defendants; (13) intentional interference with prospective business advantage against MortgageIT, Pappas, Cohen and Gorman; (14) defamation  *per se* against all defendants; (15) slander *per se* against MortgageIT, Schulman, Pappas and Cohen; (16) libel *per se* against MortgageIT and Gorman; (17) battery against MortgageIT, Schulman, Pappas and Cohen;

1

and (18) assault against MortgageIT, Schulman, Pappas and Cohen.

Defendants now move pursuant to FED. R. CIV. P. 12(b)(6) to dismiss plaintiff's: (1) Title VII claims against the individual defendants, contending that Title VII does not permit claims against individual agents of a plaintiff's employer; (2) claims sounding in negligent hiring, supervision, retention and infliction of emotional distress, contending that they are barred by the exclusivity provision of New York Workers' Compensation Law, N.Y. WORKERS' COMP. LAW § 29(6); (3) intentional infliction of emotional distress claims insofar as they are brought against MortgageIT, Pappas and Cohen, contending that they are both barred by the statute of limitations and fail to state a claim; (4) defamation *per se*, slander *per se* and libel *per se* claims, contending that they are barred by the statute of limitations and/or not pleaded with the required degree of particularity; (5) "Retaliatory Termination and Defamation Through Conspiracy" claims, contending that they are not actionable under New York law; (6) intentional interference with prospective economic advantage claim against Gorman, contending that, as to her, it is a disguised defamation claim and therefore barred by the applicable statute of limitations; and (7) assault and battery claims against MortgageIT, Pappas and Cohen, contending that they are barred by the statute of limitations and fail to state a claim upon which relief may be granted.  For the following reasons, defendants' motion is granted in part and denied in part.

## BACKGROUND

On a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all of the well pleaded facts as true and consider those facts in the light most favorable to the plaintiff.  *See Hertz Corp. v. City of New York*, 1 F.3d 121, 125 (2d Cir. 1993); *In re AES Corp. Sec. Litig.*, 825 F. Supp.

578, 583 (S.D.N.Y. 1993) (Conner, J.). Accordingly, the following statement of facts is based on the allegations in plaintiff's Second Amended Complaint.

Plaintiff was employed by MortgageIT as the Underwriting and Operations Manager of MortgageIT's White Plains office. (2d Am. Complt. ¶ 23.) Schulman was employed by MortgageIT as a Senior Loan Officer in the same office, and was regarded as a major rainmaker. (*Id.* ¶ 24.) On June 13, 2003, plaintiff witnessed Schulman verbally abuse Cohen, who was then working as Branch Manager. (*Id.* ¶ 25.) Plaintiff attempted to leave the room, and prompted Cohen to follow, but Schulman berated plaintiff and pressed her against a couch, preventing her from moving. (*Id.* ¶ 26.) While in the presence of Cohen, Schulman placed his hand on plaintiff's breast, struck her in the face and called her unspecified-ethnically derogatory remarks until he was forcibly removed from the room by two other MortgageIT employees. (*Id.* ¶ 29.)

Despite the offensiveness of Schulman's actions, Cohen refused to take any disciplinary action against him, prompting plaintiff to speak with Pappas, one of MortgageIT's principal owners and a person with operational control over many of MortgageIT's day-to-day functions. (*Id.* ¶¶ 30, 32.) Pappas stated that he was aware of Schulman's penchant for violence, as evidenced by his history of outbursts and sexual harassment, but declined to discharge Schulman, noting that he was the company's top earner. (*Id.* ¶ 33.) Cohen also expressed knowledge of Schulman's violent tendencies, but stated that she was close friends with him, and noted that the company would never discharge such a valuable employee. (*Id.* ¶ 34.)

Following the initial incident, Schulman's harassment of plaintiff intensified. Specifically, Schulman repeatedly offered to give plaintiff money or valuables if she would engage in sexual acts with him, often propositioning her in the presence of coworkers. (*Id.* ¶ 42.) On other occasions,

3

Schulman spit on plaintiff, pushed her into walls, thrust his hand in her face and touched her in an "inappropriate sexual manner." (*Id.* ¶ 44.) Although plaintiff complained to her superiors, including Pappas and Cohen, they either ignored her complaints or adversely modified her job duties and allowed Schulman's offensive conduct to continue.[1]  On one occasion, Schulman thrust his hand down plaintiff's pants "grabbing and squeezing her bare buttocks."[2]  (*Id.* ¶ 54.) Unable to obtain relief through corporate channels, plaintiff reported Schulman's conduct to police, who arrested him. (*Id.* ¶ 58-59.) Schulman ultimately pleaded guilty to the crime of Harassment in the Second Degree in violation of N.Y. PENAL LAW § 240.26 for his actions, and a permanent Order of Protection was entered.  (*Id.* ¶ 59, Ex. J.)

Although plaintiff's performance evaluations had theretofore been consistently excellent (id. ¶¶ 68-86, Ex. L), on June 7, 2004, she was given a "Warning Notice" for "poor performance" less than one week after filing the criminal complaint against Schulman. (*Id.* ¶ 97, Ex. P.) Plaintiff's employment with MortgageIT was terminated on June 14, 2004.  (*Id.* ¶¶ 66, 99.) Cohen and Pappas each personally told plaintiff that she would "pay for what [she] did to [Schulman]," and attempted to ruin her reputation in the mortgage industry.  (*Id.* ¶¶ 57, 67, 89, 92.) That same day, Gorman, a Loan Officer employed by MortgageIT, circulated an e-mail regarding plaintiff's termination.  (*Id.* ¶ 109.) In it, Gorman described plaintiff as disloyal and incompetent.  (*Id.*)  The e-mail was distributed to numerous individuals, including many not employed by MortgageIT.  (*Id.* ¶ 110.)

---

[1] Specifically, defendants removed plaintiff from her private office, divested her of certain job responsibilities, denied a second mortgage for her aged parents, and continually threatened to terminate her employment and ruin her professional reputation if she did not stop making complaints against Schulman.  (2d Am. Complt. ¶¶ 57, 89-96.)

[2] The Second Amended Complaint is replete with additional references to specific acts of harassment, which we have omitted for the sake of brevity.

Following the termination of her position at MortgageIT, plaintiff attempted to secure new employment, but was unable to do so because of negative statements made about her by defendants.[3] This litigation ensued.

On November 17, 2005, plaintiff filed a three-count Complaint, sounding in sexual harassment and retaliatory termination in violation of Title VII and common law defamation.  The Complaint named only MortgageIT as a defendant. Plaintiff amended her Complaint on February 27, 2006 to remove her defamation claim.  On September 15, 2006, plaintiff retained her present counsel, who filed the Second Amended Complaint on October 24, 2006.  As detailed previously, the Second Amended Complaint added several new defendants, as well as numerous additional claims, most of which defendants move to dismiss.  We now turn to the merits of defendants' motion.[4]

---

[3] As late as August 2, 2006—nine months after the onset of this litigation—Cohen described plaintiff to one prospective employer, Joseph Gega of Countrywide Home Loans, Inc., as "'a psychopathic liar and whore who repeatedly makes fraudulent complaints about her co-workers and superiors merely to cover up for her own laziness and incompetence[,]'" and Pappas stated that plaintiff was "'unbalanced, a liar and a slut who tried to sleep her way to the top.'"  (*Id.* ¶ 108.)  Pappas also provided Gega with a copy of the June 14, 2004 e-mail authored by Gorman.  (*Id.* ¶ 109.)

[4] We note parenthetically that plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment is sixty-four pages in length, and thus grossly exceeds this Court's twenty-five page limit for such filings.  *See* Conner, J. Individual Practices, Rule 2(c).  Although, as defendants note, we are under no obligation to consider the additional thirty-nine pages, *see Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1048 (2d Cir. 1991) (A "district court has the inherent power to decide when a departure from its Local Rules should be excused or overlooked[]"), we have nevertheless reviewed plaintiff's submission in its entirety.

**DISCUSSION**

## I.    Legal Standard

As previously stated, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all of the well-pleaded facts as true and consider those facts in the light most favorable to the non-moving party.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Hertz Corp.,* 1 F.3d at 125; *In re AES Corp.*, 825 F. Supp. at 583.  On such a motion, the issue is "whether the claimant is entitled to offer evidence to support the claims."  *Scheuer*, 416 U.S. at 236.  A complaint should not be dismissed for failure to state a claim "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Padavan v. United States*, 82 F.3d 23, 26 (2d Cir. 1996) (quoting *Hughes v. Rowe*, 449 U.S. 5, 10 (1980)).  However, allegations that are so conclusory that they fail to give notice of the basic events and circumstances of which the plaintiff complains, are insufficient as a matter of law.  *See Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

## II.    Plaintiff's Title VII Claims Against the Individual Defendants

We begin with plaintiff's Title VII claims against the individual defendants.  Specifically, in Counts I, III and V of her Second Amended Complaint, plaintiff contends that Schulman, Pappas and Cohen: (1) created a hostile working environment; (2) engaged in *quid pro quo* sexual harassment; and (3) adversely modified, and ultimately terminated, plaintiff's employment for reporting incidents of sexual harassment in violation of Title VII.[5]  Defendants, citing established

---

[5] Plaintiff alleges that, in addition to MortgageIT, Cohen and Pappas terminated her employment in retaliation for her complaints of sexual harassment.  (*See generally* 2d Am. Complt. ¶¶ 184-203.)

Second Circuit precedent, contend that these claims are improper, as Title VII does not permit recovery against individual agents of a plaintiff's employer.  Plaintiff, cognizant of this shortcoming, requests that the Court decline to follow the settled law of our Circuit, which, she contends, was wrongly decided and contravenes the intended purpose of the statute.

Whatever our belief as to the merits of plaintiff's argument, it is established well beyond the need for citation that this Court is without power to overrule a decision of the Second Circuit, which has repeatedly held that "an employer's agent may not be held individually liable under Title VII." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds, Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (affirming dismissal of plaintiff's Title VII claims against defendant in his personal capacity because "under Title VII individual supervisors are not subject to liability").  Accordingly, to the extent that plaintiffs seek to hold the individual defendants liable under Title VII for alleged sexual harassment and creating a hostile work environment, her claims must be dismissed. We note, and defendants do not dispute, that individual liability is possible under the NYHRL and plaintiffs may therefore proceed on those claims against the individual defendants.  *See Gregory v. Daly*, 243 F.3d 687, 689 n.1 (2d Cir. 2001) (stating that, under certain circumstances, employer's individual agents may be held personally liable under NYHRL).

Accordingly, Counts I, III and V must be dismissed as to all defendants except MortgageIT.

## III.   <u>Effect of Workers' Compensation Law on Plaintiff's Negligence Claims</u>

Defendants next contend that plaintiff's claims for grossly negligent hiring, supervision, retention, and infliction of emotional distress—embodied in Counts VI, VII, VIII and X of her

Second Amended Complaint—are barred by the exclusivity provision of New York Workers'

Compensation Law, which provides the sole remedy for damages caused by the negligence of one's

employer.  Like the claims addressed in Part II of this Opinion, these claims also are incompatible

with the settled law of the Second Circuit.

> N.Y. WORKERS' COMP. LAW § 29(6) provides in pertinent part:
>
> The right to compensation or benefits under this chapter, shall be the exclusive
> remedy to an employee . . . when such employee is injured or killed by the negligence
> or wrong of another in the same employ . . . .  The limitation of liability of an
> employer . . . for the injury or death of an employee shall be applicable to another
> in the same employ . . . .

The Second Circuit "held in *Torres v. Pisano*, 116 F.3d 625 (2d Cir. 1997), that the New York

Workers' Compensation Law barred a common law negligence claim that was asserted on the basis

of an alleged hostile work environment because of co-worker harassment. *Id*. at 640."  *Ferris v.

Delta Air Lines, Inc.*, 277 F.3d 128, 138 (2d Cir. 2001).  In *Ferris*, it extended that holding to include

claims for negligent retention and supervision.  *See id*.; *see also Ross v. Mitsui Fudosan, Inc.*, 2 F.

Supp. 2d 522, 533 (S.D.N.Y. 1998) (negligence claims arising out of sexual harassment lawsuit as

barred by exclusive remedy provisions of New York Workers' Compensation Law).

Plaintiff contests this proposition, relying principally on *Linder v. City of New York*, 263 F.

Supp. 2d 585, 591 (E.D.N.Y. 2003).  Surprisingly, the *Linder* court defiantly held that "despite case

law to the contrary, *see Torres v. Pisano*, 116 F.3d [at 640], this Court is of the view that the New

York Workers' Compensation Law does not bar [negligent retention claims] . . . ." (internal citation

omitted).  The *Linder* court's citation to—and contravention of—binding precedent is, to say the

least, puzzling, and we are not of the view that a district court may disregard controlling Second

Circuit precedent absent exceptional circumstances not present here.

Moreover, plaintiff's allegations of *gross* negligence are insufficient to resuscitate her claims.

As one district court has stated:

> Although "[t]here is an exception to the exclusivity of the Workers' Compensation Law '[w]here injury is sustained to an employee due to an intentional tort perpetrated by the employer or at the employer's direction,'" Plaintiff must show that the employer's acts were "directed at causing harm to the particular employee." *Acevedo v. Con. Edison Co. of N.Y.*, 189 A.D.2d 497, 500-01, 596 N.Y.S.2d 68, 70-71 (1st Dep't) (citation omitted) ("'A mere knowledge and appreciation of a risk is not the same as the intent to cause injury . . . .'"), *appeal dismissed*, 82 N.Y.2d 748, 622 N.E.2d 307, 602 N.Y.S.2d 806 (1993). Even if Astucci's actions may have amounted to gross negligence or recklessness, these are "not an exception under Workers' Compensation Law." *Lauria v. Donahue*, 438 F. Supp. 2d 131, 142 (E.D.N.Y. 2006).

*Miller v. Astucci U.S. Ltd.*, No. 04 Civ. 2201, 2007 U.S. Dist. LEXIS 4436, at *18-19 (S.D.N.Y. Jan. 16, 2007). Accordingly, Counts VI, VII, VIII and X must be dismissed.

IV.    **Whether Plaintiff's Intentional Infliction of Emotional Distress, Defamation, Intentional Interference with Prospective Economic Advantage, Assault and Battery Claims Are Barred by the One-Year Statute of Limitations and Pleaded with the Required Degree of Particularity**

Defendants next contend that many of plaintiff's claims asserted in the Second Amended Complaint must be dismissed because they are untimely and not pleaded with the requisite degree of particularity required by N.Y. C.P.L.R. § 3016(a).[6] Specifically, defendants seek dismissal of plaintiff's claims for: (1) intentional infliction of emotional distress against all named defendants except Schulman; (2) defamation *per se*, defamation through conspiracy, slander *per se* and libel *per*

---

[6] N.Y. C.P.L.R. § 3016(a) provides: "In an action for libel or slander, the particular words complained of shall be set forth in the complaint, but their application to the plaintiff may be stated generally."

se against all named defendants;[7] (3) intentional interference with prospective economic advantage against Gorman; and (4) assault and battery claims against MortgageIT, Pappas and Cohen.[8]

With regard to all defendants except Schulman, defendants seek dismissal of the aforementioned claims on statute of limitations grounds.  Schulman, however, seeks dismissal of plaintiff's defamation claims only on the ground that they are not pleaded with particularity, an argument in which the other defendants also join.  This tactical decision is curious, as defendants' statute of limitations argument appears to apply as well to Schulman.  Nonetheless, Schulman has not raised the statute of limitations as a defense even as to plaintiff's intentional infliction of emotional distress, assault and battery claims, which he does not move to dismiss on any grounds. (*See* Defs. Mem. Supp. Mot. Dismiss at 10 n.4,15 n.5.)

### A.    Timeliness of Plaintiff's Claims

As a preliminary matter, we note that each of the above-mentioned torts, save for intentional interference with prospective economic advantage, which will be addressed further *infra*, is clearly subject to the one-year statute of limitations period prescribed in N.Y. C.P.L.R. § 215(3).  *See* N.Y. C.P.L.R. § 215(3) ("The following actions shall be commenced within one year . . . an action to recover damages for assault, battery, false imprisonment, malicious prosecution, libel, slander, false

---

[7] Under New York law, "[d]efamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name. . . ."  Generally, spoken defamatory words are slander; written defamatory words are libel."  *Albert v. Loksen*, 239 F.3d 256, 265 (2d Cir. 2001) (internal quotation marks omitted; citations omitted).  For the sake of convenience, we refer to plaintiff's slander and libel claims generically as claims for "defamation," as the differences between the two torts are irrelevant to the present motion.

[8] Defendants also do not seek dismissal of plaintiff's claims against Schulman for assault and battery.

words causing special damages, or a violation of the right of privacy under section fifty-one of the civil rights law[] . . . ."); *Patterson v. Balsamico*, 440 F.3d 104, 112 n.4 (2d Cir. 2006) ("The New York courts have held that a claim for damages for intentional infliction of emotional distress is subject to the one-year statute of limitations in C.P.L.R. Section 215(3)."). "The statute of limitations for a cause of action alleging tortious interference with . . . prospective economic advantage is three years." *Radin v. Albert Einstein Coll. of Med. of Yeshiva Univ.*, No. 04 Civ. 704, 2005 U.S. Dist. LEXIS 9772, at *51 (S.D.N.Y. May 20, 2005) (citing *Demas v. Levitsky*, 291 A.D.2d 653, 658, 738 N.Y.S.2d 402 (3d Dep't 2002)).

As stated previously, however, plaintiff's original Complaint was filed on November 17, 2005—seventeen months after the alleged misconduct transpired. Thus, plaintiff's assault, battery, intentional infliction of emotional distress, and all of her defamation claims that are unrelated to the August 2, 2006 Gega incident, would be untimely even if they related back to the filing of the original Complaint.

Plaintiff contends that the filing of her complaint with the United States Equal Employment Opportunity Commission (the "EEOC") tolled the statute of limitations governing her state law claims. Under plaintiff's proposed rule, the statute of limitations on all of her claims would thus have been tolled from October 14, 2004 to August 31, 2005, and her claims would therefore be timely. (See Pl. Mem. Opp. Mot. Dismiss at 39.) Although some district courts have adopted this position, the vast majority correctly note that "[t]he weight of authority, however, does not allow the state claims to be tolled during the pendency of the EEOC claim." *Stordeur v. Computer Assocs.*

*Int'l, Inc.*, 995 F. Supp. 94, 99 (E.D.N.Y. 1998) (citing cases);[9] *see also Johnson v. Smarte Carte, Inc.*, No. 04-CV-5573, 2007 U.S. Dist. LEXIS 29385, at *14 n.5 (E.D.N.Y. April 20, 2007) ("[T]he Court notes that the weight of authority in the Second Circuit has held that state common law claims are not tolled during the pendency of an . . . EEOC claim.") (internal quotation marks omitted; citing cases).  More importantly, the Second Circuit has explicitly rejected the "argument that the statutory period should have been tolled while his EEOC charge was pending; an EEOC charge does not toll the time for state law claims arising from the same events." *Ashjari v. NYNEX Corp.*, No. 98-9411, 1999 U.S. App. LEXIS 13968, at *4 (2d Cir. June 22, 1999) (citing *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 465-66 (1975) (filing of EEOC complaint does not toll statute of limitations on 42 U.S.C. § 1981 claim arising from same events)).

Additionally, we reject plaintiff's argument that equity requires that the statute of limitations be tolled because her original counsel provided her ineffective assistance.  First, it is well-established that the Sixth Amendment right to effective assistance of counsel does not apply in civil actions, and plaintiff's numerous citations to criminal cases are thus not instructive.  *See United States v. Coven*, 662 F.2d 162, 176 (2d Cir. 1981).  Second, New York law provides for the tolling of statutes of

---

[9] Curiously, plaintiff cites *Stordeur* for the proposition that statutes of limitation on state law claims are tolled during the pendency of a complaint before the EEOC.  (*See* Pl. Mem. Opp. Mot. Dismiss at 26 ("In New York, the Statute of Limitations for a claim of [intentional infliction of emotional distress] is tolled during the pendency of an EEOC claim until the time that the EEOC issues the plaintiff a 'right to sue letter.' *Stordeur* . . . .").)  As stated previously, however, the *Stordeur* court expressly holds just the opposite.  *See Stordeur*, 995 F. Supp. at 99-102 (holding that, in accordance with the law of the Second, Fifth, Seventh and Ninth Circuits, plaintiff's state law claims were time-barred, as the filing of an EEOC complaint did not stay the relevant statutes of limitation).

limitation only in certain narrowly-defined circumstances,[10] and the doctrine of equitable tolling is patently inapplicable to the present case.  New York courts use the term "equitable tolling" "'to cover both the circumstances "where the defendant conceals from the plaintiff the fact that he has a cause of action [and] where the plaintiff is aware of his cause of action, but the defendant induces him to forego suit until after the period of limitations has expired."'"  *Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 299 (S.D.N.Y. 2002) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 82 (2d Cir. 2002)).  Although we cannot speculate on what caused the late filing of the initial Complaint, plaintiff does not allege that defendants procured her late filing through deception.  Her equitable tolling argument is thus unavailing.

Accordingly, plaintiff's assault, battery and intentional infliction of emotional distress claims (Counts IX, XVII and XVIII) are dismissed as untimely as to all named defendants other than Schulman, who has not sought their dismissal.  Moreover, plaintiff's libel, slander and defamation claims (Counts XIV, XV and XVI)—to the extent that they are not based on allegations of a conspiracy and do not relate to the Gega incident—are also dismissed as untimely as to all

_____

[10] As the *Stordeur* court noted:

New York has codified its statutes of limitations and the circumstances under which they may be tolled.  CPLR §§ 201-18.  Generally, "[a]n action . . . must be commenced within the time specified in this article. . . .  No court shall extend the time limited by law for the commencement of an action."  CPLR § 201.  The one year statute of limitation starts to run when the claim accrues.  CPLR 203(a). . . . Numerous common law tolling provisions have been retained in statutory form.  *See, e.g.*, (1) CPLR § 204(a) (statute tolls after the commencement of an action has been stayed by court order or by statute); (2) CPLR § 207 (statute tolls during defendant's absence from the state); (3) CPLR § 208 (statute tolls during period plaintiff suffers from a disability of infancy or insanity); (4) CPLR § 204(b) (statute tolls during the time that a dispute that is ultimately determined to be nonarbitrable has been submitted to arbitration).

995 F. Supp. at 98-99.

defendants other than Schulman.

Turning to plaintiff's claim for intentional interference with prospective business advantage (Count XIII), defendants contend that the drafting and circulation of the June 14, 2004 Gorman e-mail actually constituted an act of *defamation*, which, as stated previously, is subject to a one-year statute of limitations.

> Under New York law, four elements are required for a claim for interference with a prospective economic advantage: (1) [the plaintiff] had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) the defendant's interference caused injury to the relationship.

*Am. Nat'l Theatre & Academy v. Am. Nat'l Theatre Inc.*, No. 05 Civ. 4535, 2006 U.S. Dist. LEXIS 69420, at *5 (S.D.N.Y. Sept. 27, 2006) (internal quotation marks omitted; alteration in original). By comparison,

> To establish a cause of action for defamation under New York law, a private figure plaintiff must plead the following elements: (1) a false and defamatory statement of and concerning the plaintiff; (2) publication by defendant of such a statement to a third party; (3) fault on part of the defendant; and (4) injury to [the] plaintiff.

*Campos v. Lemay*, No. 05 Civ. 2089, 2007 U.S. Dist. LEXIS 33877, at *13 (S.D.N.Y. May 7, 2007) (internal quotation marks omitted; footnotes omitted).  Plaintiff's Second Amended Complaint alleges that Gorman: (1) wrote the offending e-mail; (2) sent it to various individuals within MortgageIT; (3) distributed it to an unspecified number of unascertained people not employed by MortgageIT; and (4) as part of the conspiracy to defame plaintiff, acted in concert with Cohen and Pappas to provide the e-mail to Gega in order to prevent him from entering a business relationship with plaintiff. (2d Am. Complt. ¶¶ 109-10, 293-95.)

Indeed, the two causes of action can, in certain circumstances, overlap significantly, and a

14

plaintiff's allegations often appear to satisfy the elements of both torts.  Nevertheless, a plaintiff is not automatically entitled to the luxury of the three-year statute of limitations, as "New York Courts have consistently ruled that a claim which is ostensibly based upon the intentional torts of interference with advantageous or contractual relations, but which alleges injury to reputation, is a disguised defamation claim and subject to a one-year limitations period under CPLR 215(3)." *Pedraglio Loli v. Citibank, Inc.*, No. 97 Civ. 2179, 1997 U.S. Dist. LEXIS 20070, at \*10 (S.D.N.Y. Dec. 18, 1997).

In the present case, plaintiff's claim is based wholly on Gorman's dissemination of negative statements about her and the resulting harm to her professional reputation.  It is thus, in essence, a defamation claim, and is subject to the applicable one-year statute of limitations.  *See id.* ("In his complaint, [plaintiff] avers that due to [defendant's] interference, he 'lost good will from the community to his business as an interpreter, which was his principle source of income, was prevented from attending his usual business, [and] was injured in his good name and reputation in the community.'"); *see also Morrison v. Nat'l Broad. Co.*, 19 N.Y.2d 453, 458-59, 227 N.E.2d 572, 280 N.Y.S.2d 641 (1967) (Fuld, C.J.) ("The harm assertedly sustained by the plaintiff—injury to his reputation—is precisely the same as that caused by defamation[] . . . .  In applying a Statute of Limitations, this court declared some years ago, 'We look for the reality, and the essence of the action and not its mere name.'") (internal citations omitted); *Ramsay v. Mary Imogene Bassett Hosp.*, 113 A.D.2d 149, 150-51, 495 N.Y.S.2d 282 (3d Dep't 1985) (holding that negative job references provided to area hospitals in connection with doctor's application for employment constituted defamation rather than interference with prospective economic advantage).

Moreover, the fact that Pappas provided Gega with the e-mail on August 2, 2006 is

inapposite, as republication of the defamatory material by a third party cannot be attributed to the original publisher, *i.e.*, Gorman, absent her personal involvement in or ratification of the republication, which plaintiff has not alleged.  *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 59 (2d Cir. 2002) ("[A] plaintiff may not recover damages from the original author for either product disparagement or slander arising from the republication of defamatory statements by a third party absent a showing that the original author was responsible for or ratified the republication." (citing *Macy v. N.Y. World-Telegram Corp.*, 2 N.Y.2d 416, 422-23, 141 N.E.2d 566, 161 N.Y.S.2d 55 (1957)).  Absent such allegations, we cannot conclude that Gorman personally defamed plaintiff within the limitation period.  Plaintiff's intentional interference with prospective economic advantage claim, which we have held to be a disguised claim for defamation, is therefore untimely.

> Plaintiff's claim for conspiracy to commit defamation, however, is another matter.

> Although New York law does not recognize an independent tort of conspiracy, if an underlying, actionable tort is established, . . . plaintiff may plead the existence of a conspiracy . . . to demonstrate that each defendant's conduct was part of a common scheme. . . .   To establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury.

*World Wrestling Fed'n Entm't v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001) (internal quotation marks omitted; citations omitted).  In the present case, plaintiff alleges that Cohen, Pappas, Gorman and  Schulman acted "in concert and pursuant to an agreement to retaliate against [plaintiff]" for reporting the incidents of sexual harassment.  (2d Am. Complt. ¶ 278.) She further alleges that, in furtherance of the conspiracy, Gorman wrote the June 14, 2004 e-mail, which her co-conspirator, Pappas, sent to Gega on August 2, 2006.  (*Id.* ¶¶ 282-85.) At all times, plaintiff alleges

16

that Gorman, Cohen, Pappas and Schulman knowingly and intentionally perpetrated a continuing scheme to destroy her professional reputation, and that, as a consequence, she suffered severe financial hardship.  Although the initial writing of the defamatory June 14, 2004 e-mail occurred outside the applicable limitation period, the e-mail was republished to Gega by a member of the conspiracy on August 2, 2006—well within the limitation period.  Plaintiff's conspiracy to commit defamation claim (Count XII) is therefore viable against all defendants to the extent that it relies on the act of republishing the e-mail on August 2, 2006.  *See Korry v. IT&T Corp.*, 444 F. Supp. 193, 195-96 (S.D.N.Y. 1978) (internal quotation marks omitted; citations omitted) ("In a civil conspiracy action, . . . . the Statute of Limitations . . . commences to run with respect to each act when it occurs. . . . Repeated wrongs are treated as separate rights of action and the Statute of Limitations begins to run as to each . . . upon its commission.").

### B.      Whether Plaintiff Adequately Pleaded Her Defamation Claims

We reject defendants' argument that plaintiff has not pleaded her defamation claims with the requisite particularity.  Although the N.Y. C.P.L.R. § 3016(a) requires that defamation claims be stated particularly,[11] its pleading requirements are inapplicable to the present case.  FED. R. CIV. P. 8(a)(2) merely requires that plaintiff set forth "a short and plain statement of the claim showing that [she] is entitled to relief[] . . . ."  The only special pleading requirements mandated by the Federal Rules of Civil Procedure are those contained in Rule 9, which makes no mention of defamation.  By stating facts that generally allege the elements of her defamation claims, plaintiff has satisfied the short and plain statement requirement with respect to her conspiracy claim.  *See Markovic v. N.Y.*

---

[11] *See supra*, note 6.

*City Sch. Constr. Auth.*, No. 99 Civ. 10339, 2000 U.S. Dist. LEXIS 13130, at *8-9 (S.D.N.Y. Sept. 13, 2000) ("Because plaintiff's claims do not sound in fraud, the particularity requirement of Fed. R. Civ. P. 9(b) does not apply.  In fact, defamation claims . . . have *expressly* been found to be subject to Fed. R. Civ. P. 8(a) and *not* a more heightened standard of pleading.") (emphasis in original); *see also Regal Custom Clothiers, Ltd. v. Mohan's Custom Tailors, Inc.*, No. 96 Civ. 6320, 1997 U.S. Dist. LEXIS 9288, at *21-22 (S.D.N.Y. July 1, 1997) ("The Federal Rules of Civil Procedure require less particularity in pleading defamation than New York law requires.  In fact, 'the mode of pleading defamation is governed by Rule 8 [of the] Fed. R. Civ. P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense of res judicata if appropriate.' *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980).  Contrary to defendants' arguments, the pleading need not allege the specific defamatory words, *Law Firm of Daniel P. Foster v. Turner Broadcasting System*, 844 F.2d 955, 958 n.3 (2d Cir. 1988), or the time, place, and speaker of each defamatory statement.")

## V.    **Plaintiff's Retaliatory Termination Claim**

Finally, defendants contend that plaintiff's claim for "Retaliatory Termination and Defamation Through Conspiracy" (Count XII) amounts to no more than a common law claim for wrongful discharge and thus does not state a cause of action under New York law.  We disagree.

Although defendants correctly state that "an at-will employee . . . [has] no cause of action for wrongful discharge under New York law[,]" *Spence v. Md. Cas. Co.*, 995 F.2d 1147, 1158 (2d Cir. 1993) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 300-02, 448 N.E.2d 86, 461

18

N.Y.S.2d 232 (1983)), Count XII of plaintiff's Second Amended Complaint appears to allege not common law wrongful termination, but a conspiracy to retaliate against plaintiff in violation of Title VII and NYHRL.[12]   Although, as we have noted, the individual defendants may not be held liable under Title VII, *see supra*, Part I, they may be sued individually under NYHRL.  *See Tomka*, 66 F.3d at 1317 ("[A] defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYHRL].")  Thus, because plaintiff has adequately alleged the elements of a civil conspiracy, *Bozell*, 142 F. Supp. 2d at 532 ("To establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury."); *see also supra* Part III (detailing plaintiff's conspiracy allegations in the context of her defamation claim), her claim shall remain to the extent that it is based upon violations of the NYHRL and not Title VII or common law principles.

---

[12] Although Count XII of plaintiff's Second Amended Complaint is unclear, as it makes no reference to the law on which it is based, it alleges that defendants conspired to take actions that violate Title VII and the NYHRL.  For example, plaintiff states that

> Ms. Pasqualini complained repeatedly to Ms. Cohen and Mr. Pappas about Mr. Schulman's extreme gross and outrageous conduct[] . . . including but not limited to Mr. Schulman's sexual harassment *quid pro quo*, his creation of a hostile work environment, and his assault and battery on her. . . .   The defendants Mr. Schulman, Ms. Cohen, Mr. Pappas and Ms. Gorman are acquaintances of one another and interact both professionally and socially. . . .   Following the [p]laintiff's reporting of the aforementioned conduct of Mr. Schulman . . . defendants . . . acted in concert and pursuant to an agreement to retaliate against Ms. Pasqualini for her reporting of such conduct . . . eventually causing plaintiff to be terminated from her employment with defendant MortgageIT.

(2d Am. Complt. ¶¶ 276-79.)

## CONCLUSION

For all of the foregoing reasons, the motion of defendants MortgageIT, Inc. d/b/a IPI Skyscraper Mortgage, Mark Pappas, Richard Schulman, Cheryl Cohen and Patricia Gorman to dismiss the Second Amended Complaint of plaintiff Corinne Pasqualini is granted in part and denied in part. Counts I, III and V of the Second Amended Complaint are dismissed as to all defendants except MortgageIT. Counts VI, VII, VIII, and X are dismissed in their entirety. Counts IX, XVII and XVIII are dismissed as to all defendants except Schulman. Count XII is dismissed against all defendants to the extent that it alleges civil conspiracy in violation of Title VII, but remains to the extent that it sounds in conspiracy to commit defamation and violate NYHRL. Count XIII is dismissed as to Gorman, but remains as to the other defendants. Count XIV is dismissed as to MortgageIT, Pappas, and Cohen to the extent that it is not related to the Gega incident, and is dismissed in its entirety as to Gorman. Count XIV remains, however, against Schulman, who has not sought its dismissal on statute of limitations grounds. Count XV is dismissed as to MortgageIT, Pappas and Cohen to the extent that it does not relate to the Gega incident, but also remains as to Schulman for the same reason as Count XIV. Finally, Count XVI is dismissed as to Gorman in its entirety and dismissed against MortgageIT to the extent that it is not related to the Gega incident. No costs or fees shall be assessed against any party.

SO ORDERED.
Dated: White Plains, New York
      July 27, 2007

*William C. Conner*
Sr. United States District Judge

20