UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
CORINNE B. PASQUALINI,                               No. 05 CV 9714(WCC)

                 Plaintiff,

   -against-                                            **PLAINTIFF'S RULE**
                                                                                      **56.1 STATEMENT**

MORTGAGEIT, INC., d/b/a IPI
SKYSCRAPER MORTGAGE, MARK PAPPAS,
RICHARD SCHULMAN, CHERYL COHEN
AND PATRICIA GORMAN,

                 Defendants.
------------------------------------------------------X

       Plaintiff, CORINNE B. PASQUALINI, by her attorney, JOSEPH A. MARIA, P.C., states as follows:

       1.     The Plaintiff, Corinne B. Pasqualini, at all times relevant herein, is and was a resident of the County of Westchester, State of New York.

       2.     Defendant MortgageIT was and is a corporation organized and existing under the laws of the State of New York and doing business in this judicial district.

       3.     MortgageIT is subject to the provisions of Title VII as it (i) engages in interstate commerce, and (ii) employs in excess of the statutorily required number of employees.

       4.     Defendant MortgageIt was formed by Defendant Mark Pappas (Pappas) as a d/b/a trademark to do business on the web for IPI Financial Services, a mortgage brokerage firm, allegedly in 1999, although Pappas is unclear as to dates. Ex. 3, Pappas; Ex. 11, Bierfriend, 13:20-24. In 1991, Pappas owned a company known as IPI Investment Properties, Inc. of which Suzanne Bach was one of its first employees. Ex.

10, S. Bach: 4-9. Pappas was also cofounder of IPI Financial Services sometime in the 1990's which, on or about 1999, began conducting business under the trademark name MortgageIt as a d/b/a simultaneously to IPI Financial Services. Between 1991 and 1999 Pappas kept on opening offices all over the tristate area. Ex. 3, Pappas: 12-13, 17:4-9. In 2002, Pappas acquired Skyscraper Mortgage and the name changed to IPI Skyscraper. Ex. 3, Pappas: 17-18. The White Plains office was supposed to report to him as president of retail. Id. at 20:17-20. In 2003, MortgageIt acquired IPI Skyscraper. IPI Skyscraper d/b/a MortgageIt became the entity name. Id. at 28:13-17. IPI Financial Services/IPI Skyscraper/MortgageIT was located at 120 West 45th Street in New York, New York and opened additional offices throughout New York and Connecticut, including White, Plains, New York and Stamford, Connecticut. Id. at 10-12. There were at least 60 employees in the New York City office. Ex. 9, Bach: 15-19.

5. There was no employee handbook nor any policy or procedure in existence when Defendant Cheryl Cohen was hired in 2001. Ex. 4, Cohen, 20:19-25; 91:18-22. No sexual harassment training was given to White Plains employees in 2002. Id. at 71:6-10. From 2000 to 2004, there was a loose form of a human resources department. Ex. 3, Pappas, 38-39.

6. When complaints of sexual harassment were made against Defendant Richard Schulman (Schulman) in the New York City branch, he was sent to the White Plains branch to be with his friend, Cheryl. Cohen. Ex. 11, Bierfriend:37-38. He was a top producer and was earning approximately $700,000.00 per year. Ex. 5, Schulman:30-31;39; Ex. 10, Bach:46.

7. Defendant Cheryl Cohen (Cohen) was employed by MortgageIT as the

White Plains Office Manager, with the duties of overseeing all employees at that office with the authority to hire, retain, supervise and terminate employees of the White Plains office, and was Plaintiff's immediate supervisor. Ex. 4, Cohen,

8. Defendant Patricia Gorman (Gorman) was employed by MortgageIT as Loan Officer. She participated in the retaliation against Plaintiff after Plaintiff made complaints against Schulman. Ex. 49.

9. Plaintiff was employed initially by MortgageIT as a loan processor and was promoted to Underwriting and Operations Manager of the White Plains office until her discharge in June of 2004. Ex. 1, Plaintiff, 36.

10. Schulman was also employed by MortgageIT as a Senior Loan Officer and was MortgageIT's "Top Originator", i.e., he was the individual who generated the most revenue for MortgageIT. In recent years. Schulman produced in excess of $10 million in loans annually. Ex. 5, Schulman: 30-31;39.

11. On the evening of June 13, 2003 while Plaintiff was in the office of her immediate supervisor, Ms. Cohen, the Office Manager of MortgageIT's White Plains office, Mr. Schulman screamed at Plaintiff, pushed her against a couch and pressed his body against hers so that she was unable to move. Ex. "1", Plaintiff, 84:2-8; Ex. 28.

12. Schulman then proceeded to hit Ms. Pasqualini's face with his fingers, spit on her, put his hand on her right breast, and then told her to go back to her white trash guinea family. Ex. "1", Plaintiff, 84:2-8, Ex. 28.

13. Ms. Cohen, who as MortgageIT's White Plains Office Manager had the authority to hire, retain and terminate employees, witnessed this entire altercation. Another loan officer, present in the office, physically removed Mr. Schulman from Ms.

3

Pasqualini and escorted her safely from the building. Ex. "1", Plaintiff _____.

14. Cohen did not file an official report with MortgageIT's main office and informed Ms. Pasqualini that she should not do so because "Richard Schulman is MortgageIT's biggest money maker" and Ms. Pasqualini needed to "let it go." Ex. 34.

15. Ms. Pasqualini, also reported the incident to Pappas and to Rebecca Esposito, MortgageIT's Head of Human Resources. Ex. "32".

16. Defendants knew that complaints of sexual harassment were made against Richard Schulman prior to Plaintiff's but looked the other way because he was one of the top producers for the company. Ex. 11, Bierfriend, 6-24; 32-38; 40-41; Ex. 3, Pappas, 83:18-21; Ex. 4, Cohen, 174:3-5; (put cites at end…) Mr. Schulman used to work in "The Tower"- the Manhattan branch of MortgageIT where Pappas had his office – and had to be removed from that branch and relocated to the White Plains branch because of previous instances of violent attacks and sexual abuse. According to Pappas, Suzanne Bach, the manager of the Manhattan branch threatened to resign if Mr. Schulman were not removed. An underwriter, Annette Bierfriend, made a sexual harassment complaint against Richard Schulman. Mr. Pappas told Ms. Pasqualini to take a couple of days off and that he would handle the situation. Ex. 11, Bierfriend, 37-38.

17. Cohen was also aware of the prior complaints against Schulman. However, Cohen asked him to come to White Plains because he was a close friend of hers and because he was a "Top Producer." Cohen again told Ms. Pasqualini that she needed to "let it go." Ex. "4", Cohen, 174:3-5;

18. Additionally, when Ms. Pasqualini mentioned the incident to Kirk Pappas, brother of defendant Mark Pappas, who also worked at the White Plains office of

4

MortgageIT, Kyrk Pappas informed Ms. Pasqualini "don't worry, everyone downtown knows that Richard is crazy and dangerous, they will take care of it." Ex. "1", Pltf: 121; Plaintiff Affidavit.

19.     Although Cohen informed Ms. Pasqualini in an e-mail dated June 16, 2003 that she was "sick to my stomach" over the "ordeal" Ms. Pasqualini suffered as a result of Schulman's extreme and outrageous conduct, she refused to take any remedial action against Schulman. Ex. "52".

20.     Ms. Pasqualini filed a complaint with the White Plains Police Department because she feared for her safety and Defendants were not responsive. Ex. "28".

21.     Although Pappas informed Ms. Pasqualini that he would "handle" the situation, nothing changed. After two days, Schulman was back at work and was continuing to create a hostile work environment, being physical threatening and verbally abusive to Ms. Pasqualini, including making lewd sexual comments to her, physically grabbing her and verbally abusing her. Ex. 1, Plaintiff; Ex. 9, Kaplan.

22.     Schulman would repeatedly treat her as if she were a prostitute in front of her co-workers, including Ms. Maureen O'Brien, Debra Ahern, and Kirk Pappas. On March 9, 2004, Schulman offered to buy Plaintiff a pair of Manola Blahnik if she would f_ck him and show him what she's worth. On or about March 14, 2004, Schulman asked Plaintiff if she used a "vibrator" to "gratify" herself. Ex. 1, Plaintiff.

23.     Richard Schulman repeatedly asked Plaintiff out on dates, which she repeatedly refused. Ex. 5, Schulman, 43, 49, 90.

24.     Ms. Pasqualini complained to Ms. Cohen about Mr. Schulman's conduct, she was told to "let it go" and that "Richard [Schulman] and I are very close, I will do

5

anything to protect him [Schulman]". As Ms. Cohen wrote in one e-mail to Mr. Schulman: "I think I have and will always stand by you." Exhibit "53".

25. On numerous occasions, Ms. Pasqualini informed Mr. Pappas of Mr. Schulman's inappropriate behavior, describing his physical and verbal attacks against her as well as his outrageous and extreme sexual harassment of her. Ex. 1, Plaintiff.

26. Ms. Pasqualini advised Pappas of Schulman's behavior in detail. Ex. " ". (one such e-mail to Mr. Pappas is attached as Exhibit "F").

27. Pappas condoned Schulman's behavior because he was a top producer. Ex. 5, Schulman, 30-31; 39. Pappas knew of the criminal complaint and knew of the extreme, gross and outrageous conduct of Schulman. Pappas failed to take any steps to protect Ms. Pasqualini nor to stop the outrageous conduct, thereby condoning Mr. Schulman's conduct. Ex. "5", Schulman: 112-113. In fact, Pappas asked Schulman to come back, which he did. Id. at 111-112.

28. On May 21, 2004, and while her back was turned, Schulman grabbed Plaintiff's panties and thrust his hand down the back of her underwear, grabbing and squeezing her bare buttocks. Ex. 1, Plaintiff,     ; Ex. 5, Schulman, 85-86; Ex. " ".

29. Schulman, in an e-mail to Rebecca Esposito dated June 4, 2004, actually admits to the conduct described in the above paragraph, but incredulously states that Ms. Pasqualini, who had: (i) already filed a police complaint against him, (ii) filed numerous complaints internally at MortgageIT against him, and (iii) turned down all of his sexual advancements and invitations to go away with him for the weekend, "told me to push it [tag of panties] down." Ex. 37.

30. Upon complaining of this most recent incident to Pappas in May of 2004, Pappas stated to Ms. Pasqualini that: "Corinne, you know we admire you and have great respect for your work. I know Richard is a problem, but he's [Richard] our top money maker and we're not going to lose him." Pappas went on to inform Ms. Pasqualini that: "If you repeat any of this, I will deny ever saying it, but at the end of the day if you don't let this drop, Cheryl, Richard and I will do whatever it takes to protect Richard, including getting rid of you." Plaintiff Affidavit.

31. Cohen also told Ms. Pasqualini to "let it drop" and informed her that she "will do anything to protect Richard." Cohen further told her "don't even fucking thing about attacking Richard" and that "if you do, you'll never work in this industry again." Plaintiff's Affidavit.

32. On June 9, 2004, Plaintiff filed a second complaint with the White Plains Police Department and also filed for an order of protection against Schulman, which the Court granted. Exhibits 38 and 44 respectively.

33. In connection with the criminal charges brought against Mr. Schulman arising out of his attack on Ms. Pasqualini in May of 2004, Schulman plead guilty to "Harassment in the Second Degree, Penal Law 240.26." The Order of Protection was ordered permanent by the court. Ex. 45.

34. In June of 2004, John Cuti, an attorney representing MortgageIT, contacted Marjorie Berman concerning Plaintiff's complaints against Schulman and MortgageIT. Because of Plaintiff's complaints, she was removed from the White Plains office and ordered to be transferred to the Stamford, Connecticut office. No one else had

ever been transferred to Stamford.

35. On June 15, 2004, Cohen took away Plaintiff's ...

36. Between June of 2003 and June of 2004, Mr. Schulman would disrupt MortgageIT's White Plains office by: (i) making unwanted and sexually offensive physical contact with female employees and co-workers, (ii) being physically and verbally abusive toward female employees and co-workers, (Exhibit "K") and (iii) making unwanted sexual comments and advances toward Plaintiff and other female employees. Schulman's conduct included *inter alia:*

    a. On June 13, 2003, Schulman verbally abused Ms. Pasqualini, pushed her against a couch and pressed his body against hers to that she was unable to move. Schulman then proceeded to hit Ms. Pasqualini's face with his fingers, spit on her, put his hand on her right breast, and hurled ethnically derogatory comments at her.

    b. On June 16, 2003, Mr. Schulman brought her flowers and tried to ask her out "for drinks."

    c. On a weekly and sometimes daily basis between June 2003 and June 2004, Mr. Schulman would ask Ms. Pasqualini to date him and make comments on her physical appearance.

    d. On a weekly and sometimes daily basis between June 2003 and June 2004, Mr. Schulman would insist that Ms. Pasqualini enter into a sexual relationship with him and promised that "as MortgageIT's top loan officer", he would "take care of her with the Company", if she would agree to "have sex with [him] by the third date."

    e. On a weekly and sometimes daily basis between June 2003 and June 2004, Mr. Schulman would invite Ms. Pasqualini to accompany him on weekend trips. Undaunted by Ms. Pasqualini's refusal, the request was repeated by Mr. Schulman many times.

    f. On a weekly and sometimes daily basis between June 2003 and June 2004, Schulman touched Ms. Pasqualini in an inappropriate sexual manner, including coming up behind her and rubbing her

      back, massaging her shoulders and grabbing her waist, which he sometimes did in front of MortgageIT employees, including Debra Ahern.

g.     When Ms. Pasqualini asked Mr. Schulman to stoop, he would simply tell her to "shut up" and continue the harassing conduct.

h.     In November of 2003, on a daily basis, Mr. Schulman would ask Ms. Pasqualini to enter into a sexual relationship with him insisting that if Ms. Pasqualini "f-cked" him then "you will never want to be with another man again."

i.     In December of 2003, on a weekly and sometimes daily basis, Mr. Schulman called Ms. Pasqualini on her cell phone and requested that Ms. Pasqualini travel to New York City to "date" him "in his apartment." Ms. Pasqualini understood that Mr. Schulman's statement "date [Mr. Schulman] in his apartment" means to engage in sexual intercourse with Mr. Schulman.

j.     On or about March 9, 2004, in front of several MortgageIT employees, Mr. Schulman officered to buy Ms. Pasqualini a pair of expensive "Manolo Blahnik" shoes if she would "F-ck me and show me you're worth it."

k.     On or about March 15, 2004, Mr. Schulman asked Ms. Pasqualini if she used a "vibrator" to "gratify" herself, again, in front of several MortgageIT employees, including Debra Ahern.

36.     Ms. Pasqualini reported all of the above incidents of Mr. Schulman's sexual harassment to MortgageIT, its agents, servants and employees, including Cheryl Cohen, Mark Pappas, and Rebecca Esposito, all of whom continually ignored her complaints and refused to take action against Schulman, and repeatedly told her to "let it go."

37.     Because Schulman was the top producer at MortgageIT, the submission to the sexual advances of Mr. Schulman became a term or condition of Ms. Pasqualini's employment.

38.     The sexual harassment by Mr. Schulman substantially affected Ms. Pasqualini's employment, and Ms. Pasqualini was ultimately terminated from MortgageIT on June 14, 2004.

39.     Once Ms. Pasqualini made it clear to Mr. Pappas that she would not tolerate the outrageous conduct of Mr. Schulman, the individual defendants in this complaint, namely Pappas, Cohen, Schulman and Gorman engaged in a concerted and systematic effort to destroy Ms. Pasqualini's reputation at MortgageIT and in the mortgage industry in general, and to drive her from MortgageIT. Plaintiff's Affidavit, Ex. "1".

40.     Prior to filing her complaint against Mr. Schulman's most egregious attack, which took place in May of 2004, Ms. Pasqualini was ranked as an "Outstanding" employee of MortgageIT on her annual performance review, performed by the Office Manager Ms. Cohen, dated only three (3) months earlier in February 2, 2004. ("Performance Review" attached hereto as Exhibit "L").

41.     Prior to May 2004, Cohen reviewed Plaintiff's work performance and gave a written report to the company. The Performance Review allowed Cohen to rate Ms. Pasqualini in 12 separate areas. The reviewer has the choice of assigning one of five ratings to the employee in each category. In summary, the ratings are as follows:

> "U" for Unsatisfactory;
> "C" for "performs less than expected";
> "B" for "meets job requirements";
> "A" for "on most occasions exceeds [job] requirements"; and
> **"E" for "Outstanding performance which is rarely achieved... Assignments and responsibilities are being accomplished at the highest possible level of performance. Employee producing excellent results which are the best that can be expected."** *Id.*

42. In category Number 1: "Quality of Work" Ms. Pasqualini received an "E".

43. In category No. 2: "Quality of Work" Ms. Pasqualini received an "E".

44. In category No. 3: "Dependability" Ms. Pasqualini received and "E".

45. In No. 4: "Adaptation to Change" Ms. Pasqualini received an "E".

46. In category No. 5: "Job Knowledge" there was no letter rating given, however in the "Comments" section Cohen handwrote "**Excellent.**"

47. In No. 6: "Communication" Ms. Pasqualini received an "E."

48. In No. 7: "Organization/Planning" Ms Pasqualini received an "E".

49. In No. 8: "Judgment" Ms. Pasqualini received and "E".

50. In No. 9: "Initiative" Ms. Pasqualini received an "E".

51. In No. 10: "Attendance/Punctuality" Ms. Pasqualini received an "E".

52. In No. 11: "Professionalism" Ms. Pasqualini received and "E".

53. In No. 12: "Leadership Qualities" Ms. Pasqualini received and "E".

*Id.*

54. In addition to the above ratings, Cohen also handwrote numerous Comments in Ms. Pasqualini's Performance Review, including the following:

    a. "Extremely adaptable. She will take on every and any task to get the job done.";

    b. "Corinne is well respected by the sales force as well as the processors";

    c. "Handled 200 files during the busy season";

    d. "Excellent, neat, precise and on top of everything";

    e. "Comes to work even when she is not feeling well";

    f. "Corinne always keeps me in the loop whether it is good or bad, she is always willing to admit errors as well;

      g.      Corinne will do anything and everything necessary to get the job done";

*Id.*

55.     Additionally, in the "Overall Assessment" section of the report, Cohen gives Ms. Pasqualini an "Excellent". *Id.*

56.     Furthermore in the "Summary Comments", section Ms. Cohen states: "Excellent. I could not effectively manage without her." *Id.*

57.     In the section asking the reviewer if any action should be taken against the employee, Ms. Cohen recommends Ms. Pasqualini for **PROMOTION**. *Id.*

58.     In addition, in December of 2003, Ms. Pasqualini was one of a handful of people at MortgageIT chosen to attend a "leadership event" being sponsored by the Company for the "future leaders of our company." Ex. 18.

59.     Ms. Pasqualini had been employed by MortgageIT for almost 2 years prior to this Performance Review, in <u>February 2004</u> which was completed by Ms. Cohen, the Office Manager, who was also Ms. Pasqualini's immediate superior. Ex. 15; 16.

60.     Ms. Pasqualini filed a complaint with Cohen, Pappas and Esposito of MortgageIT as a result of Mr. Schulman's attack on her in <u>May of 2004</u>. She also filed a complaint with the White Plains Police Department once Pappas and Cohen and Esposito failed to take any action. Ex. 48.

61.     After Ms. Pasqualini reported the May 2004 attack by Schulman to Cohen, she was warned by Cohen to take no further action against Mr. Schulman, nor to report Mr. Schulman's conduct to senior management or human resources. If Ms. Pasqualini did, Cohen would "destroy" her and have her transferred out of the White Plains office. Plaintiff's Affidavit.

12

62.     Schulman, Cohen and Gorman proceeded to inform various employees of MortgageIT, including Debbie Ahern as well as numerous non-employees, who also worked in the mortgage industry, including Sharon Cantor or Washington Mutual, that Ms. Pasqualini was "a f-cking liar", a "lying slut" a "f-cking lazy whore", that she was "insane" and "could never be trusted."

63.     Finally forced to confront Mr. Schulman's extreme and outrageous conduct, Mr. Schulman was terminated for a short period of time before being rehired by MortgageIT shortly after Ms. Pasqualini was terminated in June of 2004. Ex. "  ".

64.     In retaliation for reporting Mr. Schulman's conduct, Cohen stripped Ms. Pasqualini of her private office, (Exhibit "  ").

65.     In further retaliation for reporting Mr. Schulman's conduct, Ms. Cohen stripped Ms. Pasqualini of part of her job functions, including but not limited to the prestigious position of being in charge of "e-time", (Exhibit "  ").

66.     In further retaliation for reporting Schulman's conduct, Cohen withdrew Plaintiff's mother's approved loan from Greenpoint Bank through MortgageIT was terminated by MortgageIT. Exhibit "  ").

67.     Finally, <u>less than one week</u> after filing the criminal complaint against Mr. Schulman, Ms. Pasqualini was ordered to a meeting at MortgageIT's main office on June 7, 2004. On that date Ms. Pasqualini was given a "Warning Notice" for "Poor Performance", <u>just four (4) months after the Performance Review</u>. (Exhibit "P). In further retaliation, Defendants directed Plaintiff to appear at a meeting in the guise of a mediation to serve her with a warning notice that consisted of actions and events that

occurred months before. Her sexual harassment complaint was not addressed.

68.     In further retaliation for reporting Mr. Schulman's conduct, Ms. Pasqualini was removed from the White Plains office and informed that she was being transferred out of the White Plains branch to a branch in another state, where her compensation would be substantially lower.

69.     Ms. Pasqualini was terminated from MortgageIT on June 14, 2004.

70.     However the retaliation did not stop with Ms. Pasqualini's discharge.

71.     Ms. Cohen, furious that Ms. Pasqualini had reported Mr. Schulman's conduct provided a prospective employed with a scathing recommendation causing Plaintiff to lose a job offer.

Dated: White Plains, New York
       January 20, 2009

S/_____
Frances Dapice Marinelli (FM2152)
A Member of the Law firm of
JOSEPH A. MARIA, P.C.
Attorneys for Plaintiff
301 Old Tarrytown Road
White Plains, New York 10603
Tel: 914 684-0333
File No. 01-2044(dj)